ASOCIACIÓN DE CONDÓMINES, CONDOMINIO TOWN HOUSE, demandante y recurrida, *v.* WILLIAM E. NAVEIRA, demandado y peticionario.

Número: O-76-145        Resuelto: 31 de mayo de 1977

*William E. Naveira, pro se; Manuel Fuentes Adorno,* abogado de la recurrida.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

La Asociación de Condómines demandó a Naveira ante el Tribunal de Distrito en cobro de $2,777.70 por concepto de cuotas de mantenimiento de elementos comunes correspondientes al apartamento Núm. 2207 del Condominio Town House en Río Piedras. Formuló el demandado moción de sentencia sumaria acompañando a la misma documentos acreditativos de que adquirió dicho apartamento en subasta pública celebrada el 28 de mayo de 1974, en procedimiento de ejecución de hipoteca instado por Federal National Mortgage Association contra la viuda e hijos de Henri Marsh quien el 10 de diciembre de 1964 había hipotecado dicho apartamento en garantía de un pagaré por $20,000.00 el que de buena fe y en el curso regular de los negocios fue endosado y cedido a la ejecutante por la acreedora original Housing Investment Corporation. Se sacó a remate el apartamento de los Marsh para satisfacer una sentencia que por $17,526.93 de principal, $2,000 de costas y honorarios de abogado y otros créditos accesorios obtuvo la Federal National Mortgage Association en el Tribunal Superior de San Juan. A la subasta comparecieron otros dos licitadores además del aquí demandado Naveira quien obtuvo la buena pro con una oferta final de $24,000 que superó seis licitaciones previas, y a petición suya el Tribunal Superior a tenor del Art. 125 de la Ley Hipote-

caria ordenó la cancelación de gravámenes posteriores entre los que se contaba un embargo por $248.00 anotado el 25 de abril de 1968 en el Registro de la Propiedad a favor de "Association Owners Condominium Town House" originado en pleito en cobro de dinero contra Henri Marsh.

Fundado en dichos antecedentes, alegó el recurrente en su moción de sentencia sumaria que por ser un comprador de buena fe en subasta pública a quien aprovecha la preferencia de primer gravamen reconocida a la hipoteca ejecutada, sobre las cuotas de condominio y habiéndose cancelado por providencia judicial todos los gravámenes posteriores, la demanda no plantea cuestión justiciable. Tanto el Tribunal de Distrito como el Superior denegaron la moción del demandado y al recurrir éste en *certiorari,* expedimos el auto el 22 de abril de 1976.

La construcción de grandes edificios divididos en apartamientos y sometidos al régimen de propiedad horizontal provisto en la Ley Núm. 104 de 25 de junio de 1958 (31 L.P.R.A. sec. 1291 y ss.) ha sido en Puerto Rico una importante contribución al mejoramiento de la vivienda para todas las clases económicas, aprovechando al máximo la escasa tierra disponible para el desarrollo urbano y aminorando los altos costos de servicios públicos de seguridad, vías públicas, limpieza, acueductos y alcantarillados y demás inherentes a la dispersión en un solo plano que caracteriza las urbanizaciones. La vivienda en condominio tiene el inevitable corolario de una paz hogareña compartida que se logra únicamente si los condómines en su totalidad observan una conducta de respeto y consideración al bienestar común dentro de una relación que no puede ser disuelta sin mediar el consentimiento unánime. Art. 34 de la Ley (31 L.P.R.A. sec. 1292*l*). Una de las más frecuentes causas de erosión de la buena convivencia entre condómines, que constituye a la vez amenaza para la preservación y buena administración del edificio, radica en la falta de aportación a los gastos comunes de conservación, hoy

generalmente conocidos como cuotas de mantenimiento. Contra esta situación anómala previno la Ley desde un principio en su Art. 39 al ordenar:

"Los titulares de los apartamientos están obligados a contribuir proporcionalmente a los gastos para la administración, conservación y reparación de los elementos comunes generales del edificio y, en su caso, de los elementos comunes limitados, así como a cuantos más fueren legítimamente acordados.

Ningún titular podrá librarse de contribuir a tales gastos por renuncia al uso o disfrute de los elementos comunes, ni por abandono del apartamiento que le pertenezca." 31 L.P.R.A. sec. 1293c[1].

---

[1] Esta medida de protección colectiva fue fortalecida por enmienda del Art. 39 mediante Ley Núm. 157 de 4 de junio de 1976 que le adicionó los siguientes 6 párrafos:

"La cantidad proporcional con que debe contribuir cada titular a los gastos comunes se determinará, fijará e impondrá al principio de cada año calendario o fiscal y vencerá y será pagadera en plazos mensuales. Las cuotas que los titulares no cubran dentro del plazo fijado para su pago, devengarán intereses al tipo máximo legal. La falta de pago de tres o más plazos consecutivos conllevará una penalidad adicional equivalente al uno por ciento mensual del total adeudado.

"El titular moroso será requerido de pago mediante correo certificado con acuse de recibo y de no verificar el pago en el plazo de quince días, se le podrá exigir por la vía judicial.

"La deuda de un titular por concepto de gastos comunes hasta la suma de quinientos (500) dólares o hasta la cantidad que represente la falta de pago de no más de seis (6) plazos, le podrá ser reclamada judicialmente con arreglo al procedimiento abreviado dispuesto bajo la Regla 60 de las de Procedimiento Civil de 1958, según enmendadas.

"Cuando se reclame la deuda por la vía judicial, el Tribunal, a instancias del demandante, decretará el embargo preventivo de los bienes del deudor o deudores, sin otro requisito que la presentación de una certificación jurada por el Presidente y por el Secretario del Consejo de Titulares, ante un notario público u otro funcionario autorizado para tomar juramentos, en que conste el acuerdo que aprobó el gasto exigible y su cuantía, así como la gestión de requerimiento de pago a que se refiere el párrafo cuarto anterior.

"Cuando el demandante así lo solicitare en aquellos casos en que el titular moroso hubiere arrendado el apartamiento, el Tribunal podrá ordenar al arrendatario que consigne judicialmente a favor del Consejo de Titulares la cantidad total por concepto de cánones de arrendamiento, según éstos vayan venciendo, hasta que se cubra totalmente la deuda del titular.

"Aquellos titulares que adeuden tres (3) ó más plazos consecutivos,

Para asegurar las fuentes de crédito (²) imprescindibles para la construcción y continuada existencia de los multi-familiares y demás edificios bajo régimen de condominio, el legislador estableció la siguiente prelación de créditos:

Art. 40

"El crédito contra cualquier titular, por su parte en los gastos a que se refiere la sec. 1293c de este título tendrá preferencia sobre cualquier otro crédito de cualquier naturaleza, excepto los siguientes:

(a) Los créditos a favor del Estado por el importe de las tres últimas anualidades vencidas y no satisfechas de las contribuciones que graviten sobre el apartamiento.

(b) Por la prima de seguro de dos años, del apartamiento o del edificio total, en su caso, y si fuese el seguro mutuo por los dos últimos dividendos que se hubiesen repartido.

(c) Los créditos hipotecarios inscritos en el Registro de la Propiedad." 31 L.P.R.A. sec. 1293d. (³)

---

quedarán temporalmente privados de ejercer su derecho al voto en las reuniones del Consejo de Titulares hasta tanto satisfagan la deuda en su totalidad."

(²) El Art. 40 es explícito en lo relativo a la prelación del crédito hipotecario, reconociendo preferencia sobre éste únicamente a seis anualidades de contribuciones y dos de primas de seguro. En cierto aspecto importante este Artículo es una representación a inversionistas y financiadoras de condominios de que la garantía de su dinero no será disminuída por las cuotas de mantenimiento impagadas que acumule el deudor hipotecario. De otro modo se introduciría un nuevo elemento o factor en el financiamiento de inmuebles que haría más oneroso la obtención de crédito por el comprador de vivienda en condominio. Es realidad notoria que en Puerto Rico la inmensa mayoría de apartamentos en condominio se adquieren mediante facilidades de crédito aseguradas con hipoteca, y todo lo que restrinja o encarezca este mercado de hipotecas habrá de reducir indefectiblemente la capacidad de los compradores para adquirir una vivienda. Se deduce de ello la razón del legislador al no postergar la hipoteca a la responsabilidad por cuotas de mantenimiento devengadas con posterioridad al gravamen real preferente y cuyo importe es impredecible en el momento de constitución del crédito hipotecario. El comprador convencional pacta y acuerda el precio conociendo el total exacto de las cuotas adeudadas, por las que habrá de asumir responsabilidad. Para el acreedor hipotecario esa deuda no es elemento contractual simplemente porque no existe al tiempo de constituirse la hipoteca que garantiza el precio de compra.

(³) Este Art. 40 tiene el siguiente nuevo texto introducido por las enmiendas de 1976:

Mas acentuando su determinación de que "ningún titular podrá librarse de contribuir a tales gastos por renuncia de uso o disfrute de los elementos comunes, ni por abandono del apartamiento que le pertenezca" (Art. 39, *ante*), la Asamblea Legislativa impuso la siguiente norma de responsabilidad solidaria:

Art. 41

"El adquirente de un apartamiento será solidariamente responsable con el transmitente del pago de las sumas que éste adeude, a tenor con la sec. 1293c de este título, hasta el momento de la transmisión, sin perjuicio del derecho del adquirente a repetir contra el otro otorgante, por las cantidades que hubiese pagado como deudor solidario." 31 L.P.R.A. sec. 1293e.

Este precepto cuyo texto original antes de su enmienda por Ley Núm. 157 de 1976 gobierna la reclamación contra el recurrente, convierte al adquirente en fiador o garantizador del condómine deudor. El recurrente, comprador en subasta de tal grado voluntario que hubo de sobrepujar a otros dos licitadores para llevarse el remate se colocó de su libre arbitrio en la situación de responsabilidad solidaria que define el artículo. Su razón de adquirir fue un acto volitivo dictado por su propia conveniencia en el campo de los negocios, y por tanto no puede invocar la preferencia (⁴) que el Art. 40 (c) reserva al dueño de un crédito hipo-

---

Art. 40

"El crédito contra cualquier titular por su parte en los gastos a que se refiere el Artículo 39 de esta ley tendrá preferencia sobre cualquier otro crédito de cualquier naturaleza excepto los siguientes:

"(a) Los créditos a favor del Estado Libre Asociado y la correspondiente municipalidad por el importe de las cinco últimas anualidades y la corriente no pagada, vencidas y no satisfechas de las contribuciones que graviten sobre el apartamiento.

"(b) Por la prima del seguro de dos años, del apartamiento o del inmueble total, en su caso, y si fuese el seguro mutuo por los dos últimos dividendos que se hubiesen repartido.

"(c) Los créditos hipotecarios inscritos en el Registro de la Propiedad."

(⁴) La falta del adjetivo "voluntario" cualificando la voz "adquirente" en el Art. 41 le permitió al recurrente el argumento de que de no operar

tecario. Dicha preferencia correspondía a la acreedora ejecutante Federal National Mortgage Association cuyo representante hizo dos ofertas en el acto de subasta: al abrir, una por $17,527.00 y más tarde otra por $22,161.95 (importe de la sentencia), que fueron superadas por el recurrente. Este detalle de incompatibilidad de intereses y de abierta competencia entre la acreedora hipotecaria y el adjudicatario en subasta muestra en alto relieve la ausencia de condición en éste para reclamar la prelación reservada al "crédito hipotecario inscrito en el Registro de la Propiedad."

La política pública de fomentar la construcción de edificios de apartamientos en condominio, manifiesta en el balance logrado en la Ley entre los intereses de los titulares condómines y los de sus acreedores recibió una saludable aclaración y ratificación al reformarse por la Ley Núm. 157 de 1976 el texto del Art. 41 así:

Art. 41

---

la prelación a su favor, tampoco beneficiaría al Estado que cobra las contribuciones, a la aseguradora que exige sus primas o al acreedor que ejecuta la hipoteca dado el caso que fuesen adjudicatarios en subasta lo que plantearía un conflicto entre los Arts. 40 y 41. La teoría es inaceptable a la luz de la política pública que encarna la Ley de la Propiedad Horizontal y del cuidadoso balance en que mantiene los intereses de la administración del condominio de una parte y los de sus acreedores de la otra, según explicados con amplitud en esta opinión. En este aspecto la enmienda de 1976 que introdujo en el Art. 41 el adjetivo "voluntario" sólo corrigió una deficiencia de expresión, toda vez que la doctrina consistentemente exime de responsabilidad solidaria por cuotas de mantenimiento al acreedor hipotecario que adquiere título de propiedad del apartamiento en procedimiento ejecutivo. *Ferrer y Stecher, Law of Condominium*, Vol. 1, Sec. 438, pág. 303.

Notamos que el recurrente prácticamente abandonó el argumento de que la cancelación de gravámenes posteriores por mandamiento judicial post subasta a tenor del Art. 125 de la Ley Hipotecaria, obtenida por un acreedor preferente, exhonera a éste de toda responsabilidad por las cuotas de condominio. Su posición revisada se ajusta al concepto de prelación de créditos definido en el Art. 1827 del Código Civil así: "Los créditos que gozan de preferencia con relación a determinados bienes inmuebles o derechos reales, excluyen a todos los demás por su importe hasta donde alcance el valor del inmueble o derecho real a que la preferencia se refiera." 31 L.P.R.A. sec. 5212. La extinción de un derecho real en la esfera registral no conlleva su extinción en la esfera de derecho civil extraregistral. Art. 125, Párrafo 3º, Ley Hipotecaria (30 L.P.R.A. sec. 221).

"La obligación del titular de un apartamiento por su parte proporcional de los gastos comunes constituirá un gravamen sobre dicho apartamiento. Por lo tanto, el adquirente voluntario de un apartamiento será solidariamente responsable con el transmitente del pago de las sumas que éste adeude, a tenor con el Artículo 39, hasta el momento de la transmisión, sin perjuicio del derecho del adquirente a repetir contra el otro otorgante, por las cantidades que hubiese pagado como deudor solidario.

La referida obligación será exigible a quien quiera que sea titular de la propiedad que comprende el apartamiento, aun cuando el mismo no haya sido segregado e inscrito como finca filial en el Registro de la Propiedad, o enajenado a favor de persona alguna." (31 L.P.R.A. sec. 1293e.)

La intención legislativa de fortalecer la responsabilidad solidaria entre el condómine deudor y el adquirente del apartamiento, por los gastos comunes que aquél adeude hasta el momento de la transmisión, extensiva a un comprador en subasta, se deduce del abarcador lenguaje del Art. 41 desde su texto original de 1958 en que el legislador descarta la exención provista para el adquirente en venta involuntaria en el Estatuto modelo de la FHA sec. 23(b), (5) patrón seguido por algunos estados de la Unión, y que por el constante financiamiento de viviendas por dicha agencia en Puerto Rico es pieza de regulación conocida.

El texto del Art. 41 (31 L.P.R.A. sec. 1293e) tanto antes como después de las enmiendas introducidas por la Ley Núm. 157 de 4 de junio de 1976, impone responsabilidad solidaria por las sumas que adeude el titular, al adquirente *voluntario*, como lo es un comprador convencional, un donatario, un permutante o un licitador que se lleva la buena pro

---

(5) Dicha sec. 23(b) dice:

"Where the mortgagee of a first mortgage of record or other purchaser of an apartment obtains title to the apartment as a result of foreclosure of the first mortgage, such acquirer of title, his successors and assigns shall not be liable for the share of the common expenses or assessments by the Association of Apartment Owners chargeable to such apartment which became due prior to the acquisition of title to such apartment by such acquirer . . . ."

en la subasta. Resultarían adquirentes "involuntarios" y por lo tanto exentos de la citada obligación por los gastos comunes del condominio, aquellas personas que advienen dueños del apartamiento al ejercer los créditos preferentes que señalan las letras (a), (b) y (c) del Art. 40 (31 L.P.R.A. sec. 1293d). La razón bien fundada de esta distinción entre el adquirente *voluntario* y el *involuntario* radica en el disímil interés de uno y otro. El voluntario es un comprador que bien informado de los gravámenes y cargas del apartamiento lo adquiere porque es un buen negocio. El adquirente involuntario es originalmente un acreedor cuyo interés fundamental no es hacerse dueño del apartamiento sino proteger su acreencia constituida usualmente antes de que empiece a acumularse la deuda por gastos comunes del condominio. El adquirente voluntario tiene oportunidad y medios de enterarse[6] de la deuda por gastos comunes del condominio y poder de decisión para asumirlos como gravamen del inmueble que adquiere. Para el adquirente involuntario, acreedor en uno de los tres casos del Art. 40, dicha deuda no es elemento u objeto de contratación y su acreencia no debe sufrir disminución porque el deudor incumpla otra obligación ajena y extraña a la suya. Bajo ninguna circunstancia sería equitativo exigir esa deuda al Estado o Municipio que ejecuta en cobro de contribuciones, al asegurador que exige judicialmente las primas de dos años o al acreedor hipotecario que ejecuta para recobrar el principal y los intereses pactados. Cualquiera de éstos sería un adquirente accidental que advendría dueño sólo en el caso de que realizado el apartamiento en subasta pública ningún licitador se presentara y hubiere entonces el ejecutante que tomar la propiedad en pago total o parcial de su acreencia como único recurso para proteger su crédito.

---

[6] En ninguna de las tres instancias que ha recorrido este pleito, ha alegado el recurrente que desconociera la deuda por cuotas de condominio cuando fue a la subasta.

La Ley Núm. 157 de 4 de junio de 1976 introdujo una fundamental enmienda al Art. 41 al ordenar que "la obligación del titular de un apartamiento por su parte proporcional de los gastos comunes constituirá un gravamen sobre dicho apartamiento" precepto equivalente a declarar que la obligación del propietario de un departamento por expensas comunes sigue siempre al dominio de su departamento, aun respecto de expensas devengadas antes de su adquisición.

Por haber surgido los hechos del presente caso antes de la enmienda no es necesario por ahora analizar su efecto sobre la prelación de créditos instituida en el Art. 40 y la exención de solidaridad con el deudor de cuotas de mantenimiento en esta opinión reconocida al primer acreedor hipotecario.

El recurrente no está exento de solidaridad con el titular deudor porque no es acreedor que ejecuta uno de los créditos preferentes del Art. 40, sino un comprador o adquirente voluntario. *Confirmada.*