EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Condominio First Federal Savings<br><br>Peticionario<br><br>v.<br><br>LSREF2 Island Holdings LTD, Inc.<br><br>Recurrido | Certiorari<br><br>2019 TSPR 128<br><br>202 DPR ____ |

Número del Caso:  CC-2016-174

Fecha: 23 de julio de 2019

Tribunal de Apelaciones:

    Región Judicial de San Juan, Panel Especial

Abogado de la parte peticionaria:

    Lcdo. Rafael Sánchez Hernández

Abogado de la parte recurrida:

    Lcdo. Roberto A. Cámara Fuertes

Materia: Propiedad Horizontal - Una compañía que se dedica a la compra de créditos hipotecarios se considera un adquiriente voluntario para fines de la protección del Art. 41 de la Ley de Condominios y de la prelación del acreedor hipotecario del Art. 40(c) de la Ley de Condominios.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Condominio First Federal
Savings

    Peticionario

        v.

LSREF2 Island Holdings
LTD, Inc.

    Recurrido

CC-2016-0174     Certiorari

Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo

San Juan, Puerto Rico, a 23 de julio de 2019.

Nos corresponde evaluar si una compañía cuyo negocio es la compra de créditos hipotecarios, por definición, debe considerarse un adquirente involuntario para fines de la protección del Art. 41 de la Ley de Condominios, *infra*, y de la prelación del acreedor hipotecario que dispone el Art. 40(c) de la Ley de Condominios, *infra*.

Resolvemos que una compañía de este tipo es un adquirente voluntario y, en consecuencia, no puede invocar la protección ni la prelación del crédito que le asiste a un adquirente involuntario, por lo que es responsable solidariamente del pago de todas las cuotas de mantenimiento adeudadas y las acumuladas al momento de la adquisición de los inmuebles.

# I

El Condominio First Federal Savings (Condominio) presentó una *Demanda* en cobro de dinero en contra de LSREF2 Island Holdings, LTD, Inc. (recurrida), por concepto de cuotas de mantenimiento adeudadas. Alegó que la recurrida era titular registral de 9 inmuebles ubicados en el Condominio y que al 30 de junio de 2014 la deuda total de los apartamientos ascendía a $108,138.33.[1] Planteó que, a pesar de haber notificado a la recurrida para que pagara dicha cantidad, ésta no había pagado.

Por su parte, la recurrida presentó una *Moción de desestimación* en la que admitió ser titular registral de los inmuebles, pero argumentó que era adquirente involuntario porque los adquirió mediante subastas públicas.[2] Manifestó que solo le correspondía pagar las cuotas de mantenimiento atrasadas de los seis meses previos a la adquisición de los inmuebles, es decir, desde que se adjudicaron las subastas.[3] Por ello, además de

---

[1] En específico, se trataba de las Oficinas 3-403, 1403, 1404, 1405, 1406, 1407, 1408, 1409 y 1410 en el Condominio First Federal Savings (Condominio). Véase *Demanda*, Apéndice de la Petición de *certiorari*, págs. 2-6.

[2] Según surge de la *Moción de desestimación*, la Oficina 3-403 se adjudicó mediante subasta pública efectuada el 4 de diciembre de 2013 y las Oficinas 1403, 1404, 1405, 1406, 1407, 1408, 1409 y 1410 fueron adjudicadas mediante subasta pública el 23 de abril de 2014. Véase *Moción de desestimación*, Apéndice de la Petición de *certiorari*, págs. 17-18. Véanse, además: *Escritura de Venta Judicial Núm. 183* otorgada el 6 de diciembre de 2013 y *Escritura de Venta Judicial Núm. 27* otorgada el 24 de abril de 2014, Apéndice de la Petición de *certiorari*, págs. 22-75.

[3] Recuérdese que la Oficina 3-403 se adjudicó mediante subasta pública el 4 de diciembre de 2013 y las Oficinas 1403, 1404, 1405, 1406, 1407, 1408, 1409 y 1410 se adjudicaron mediante subasta pública el 23 de abril de 2014.

solicitar la desestimación, la recurrida consignó $27,170.20 en pago total de las cuotas de mantenimiento hasta el 31 de agosto de 2014.[4] Posteriormente, el Condominio presentó una *Demanda Enmendada* en la cual alegó que la recurrida no era adquirente involuntario, sino **una corporación dedicada a las inversiones y negocios como "la compra de litigios, sentencias, bienes muebles e inmuebles con el propósito de especulación, inversión y venta".**[5] Planteó que, al 30 de noviembre de 2014, la deuda por las cuotas de mantenimiento había aumentado a $125,249.25 y advirtió que la deuda ascendía a razón de $2,550.84 mensuales, más intereses y penalidades.

La recurrida, entonces, contestó la *Demanda* original y negó la deuda reclamada por el Condominio. Asimismo, en su defensa, reiteró los argumentos sobre la titularidad registral, la adquisición involuntaria de las propiedades mediante subastas públicas y, en consecuencia, que su responsabilidad era limitada a los seis meses previos a la adquisición cuya cantidad se había consignado en el tribunal de instancia junto con los pagos de hasta el último mes vencido.

---

[4] Esta suma incluye las cuotas de los seis meses previos a las fechas de adquisición de los inmuebles mediante las respectivas subastas públicas, más las cuotas mensuales subsiguientes hasta el 31 de agosto de 2014. Entiéndase que agosto fue el último mes antes de que LSREF2 Island Holdings, LTD, Inc. (recurrida) solicitara la desestimación de la *Demanda*. Véanse *Moción de desestimación*, Apéndice de la Petición de *certiorari*, pág. 18; *Moción en torno a consignación*, Apéndice de la Petición de *certiorari*, pág. 15.

[5] *Demanda Enmendada*, Apéndice de la Petición de *certiorari*, pág. 102.

Ante esto, el Condominio presentó una moción en la que insistió que, por el tipo de negocio de la recurrida, ésta no podía ser considerada un adquirente involuntario.[6] Basado en este argumento, el Condominio solicitó al foro de instancia la denegatoria de la petición de desestimación presentada por la recurrida.[7] Sin embargo, el tribunal de instancia dictó una Sentencia en la cual declaró "con lugar" la *Moción de desestimación* y, por consiguiente, desestimó la *Demanda Enmendada* al amparo de la Regla 10.2 (5) de Procedimiento Civil, 32 LPRA Ap. V. El Condominio solicitó sin éxito la reconsideración del dictamen. En desacuerdo, el Condominio apeló ante el Tribunal de Apelaciones, pero este foro confirmó la decisión recurrida. En particular, el foro apelativo intermedio razonó que la recurrida había presentado evidencia acreditativa de que adquirió los inmuebles mediante subastas públicas y concluyó que, en virtud de la doctrina vigente, la cualificaba como adquirente involuntario. Además, el Tribunal de Apelaciones determinó que, por el acto de la consignación de las cuotas de mantenimiento atrasadas junto con las cuotas adeudadas desde la adquisición hasta el último mes vencido, era innecesaria la continuación del descubrimiento de prueba.

---

[6] *Moción solicitando orden enmendada y solicitud de término*, Apéndice de la Petición de *certiorari*, pág. 114.

[7] El Condominio, además, solicitó al foro de instancia que emitiera unas órdenes relacionadas con la contestación de la Demanda Enmendada y el descubrimiento de prueba.

Inconforme, el Condominio presentó una Petición de *certiorari* ante esta Curia. Ahora bien, tal como mencionamos al principio la controversia medular en el presente caso es dilucidar si la recurrida cumple con la definición de un adquirente involuntario o si, por el contrario, es un adquirente voluntario. La contestación a esta interrogante dispone de los señalamientos de error presentados por el Condominio. Expedido el recurso, y luego de que las partes cumplieran con nuestra orden para la presentación de los Alegatos, nos encontramos en posición para resolver.

## II

La fuente primaria del régimen de propiedad horizontal es la propia Ley, por lo que sus disposiciones son mandatorias y no supletorias.[8] Desde la aprobación de la Ley Núm. 104 de 25 de junio de 1958, según enmendada, conocida entonces como la Ley de Propiedad Horizontal, 31 LPRA 1293 *et seq.*, se estableció la obligación de cada titular al pago de los gastos comunes o cuotas de mantenimiento como uno de los principios esenciales de la vida en comunidad.[9] Asimismo, se instituyó que del titular transmitir la propiedad, éste y el adquirente tendrían la responsabilidad solidaria del pago de las cuotas de

---

[8] M.J. Godreau, *El condominio: El régimen de propiedad horizontal en Puerto Rico*, San Juan, Ed. Dictum, 1992, pág. 70.

[9] Art. 39 de la Ley de Propiedad Horizontal, 31 LPRA sec. 1293c.

mantenimiento impagadas.[10] Sin embargo, luego de casi dos décadas, los grandes cambios socioeconómicos en Puerto Rico requirieron la implementación de una reforma con relación a aspectos del estatuto que dificultaban la vida en comunidad y, por ende, afectaban adversamente los adquirentes de apartamientos sometidos al régimen de propiedad horizontal.[11] Bajo este entendido, se aprobó la Ley Núm. 157 de 4 de junio de 1976 cuyas enmiendas al Art. 41 de la entonces Ley de Propiedad Horizontal, 31 LPRA sec. 1293e (Art. 41), tuvieron el alcance de ratificar la política pública de "fomentar la construcción de edificios de apartamentos en condominios, manifestada en el balance logrado en la Ley entre los intereses de los titulares condómines y los de sus acreedores…".[12] De este modo, la enmienda a esta disposición clasificó como adquirente voluntario al obligado a responder solidariamente con el transmitente del pago de las cuotas de mantenimiento adeudadas.[13] Ahora bien, en Asociación de Condómines v. Naveira, 106 DPR 88 (1977), esta Curia realizó un análisis

---

[10] Originalmente, el Art. 41 de la Ley de Propiedad Horizontal, 31 LPRA sec. 1293e (Art.41) establecía lo siguiente:

> El adquirente de un apartamiento será solidariamente responsable con el transmitente del pago de las sumas que éste adeuda, a tenor con el Artículo 39, hasta el momento de la transmisión, sin perjuicio del derecho del adquirente a repetir contra el otro otorgante, por las cantidades que hubiese pagado como deudor solidario.

[11] Exposición de Motivos de la Ley Núm. 157 de 4 de junio de 1974, 7ma Asamblea Legislativa, 4ta Sesión Legislativa, pág. 485.

[12] Asociación de Condómines v. Naveira, 106 DPR 88, 95 (1977).

[13] Íd., pág. 96; Art. 41, supra.

minucioso del adquirente voluntario y, por primera vez, incorporamos a nuestro derecho puertorriqueño la figura del adquirente involuntario. Allí, entre otras cosas, reiteramos que la enmienda al Art. 41, *supra*, ciertamente fortalecía la responsabilidad solidaria entre el condómine deudor y el adquirente del apartamiento. En esencia, resolvimos que un particular que concurra en una subasta pública con el acreedor que ejecuta y en la pública subasta se lleva la buena pro es un adquirente voluntario, por lo que responde solidariamente del total de las cuotas de mantenimiento impagadas por el deudor.

Luego de varios años de haber resuelto <u>Asociación de Condómines v. Naveira</u>, *supra*, se aprobó la Ley Núm. 43-1996, que incorporó la figura del adquirente involuntario para imponerle la responsabilidad -que antes no tenía- del pago de hasta 3 cuotas de mantenimiento adeudadas al momento del traspaso de titularidad del inmueble ejecutado.[14] Posteriormente, a través de la

---

[14] La Ley Núm. 43-1996, además de imponer la responsabilidad al adquirente involuntario, derogó *nunc pro tunc* la Ley Núm. 153-1995 que eliminó el adjetivo "voluntario" del Art. 41, *supra*, por lo que aquella ley reestableció la disposición a su estado original.

> La obligación del titular de un apartamento por su parte proporcional de los gastos comunes y aquellos otros gastos legítimamente aprobados constituirá un gravamen sobre dicho apartamento. **Por lo tanto, el adquirente voluntario** de un apartamento será solidariamente responsable con el transmitente del pago de las sumas que éste adeude, a tenor con el Artículo 39, hasta el momento de la transmisión, sin perjuicio del derecho del adquirente a repetir contra el otro otorgante, por las cantidades que hubiese pagado como deudor solidario. Sin embargo, un adquirente involuntario será responsable solamente **hasta un máximo de tres (3) cuotas adeudadas al momento de adquirir la propiedad.**

Ley Núm. 103-2003, conocida como la Ley de Condominios de 2003, 31 LPRA sec. 1291 *et seq.,* (Ley de Condominios) la Asamblea Legislativa enmendó sustancialmente la Ley de Propiedad Horizontal para, además de reafirmar sus principios fundamentales, duplicar la responsabilidad del adquirente involuntario al disponer lo siguiente:

> La obligación del titular de un apartamiento por su parte proporcional de los gastos comunes constituirá un gravamen sobre dicho apartamiento, una vez anotado en el Registro de la Propiedad. Por lo tanto, luego de la primera venta*,* el adquirente voluntario de un apartamiento será solidariamente responsable con el transmitente del pago de las sumas que éste adeude, a tenor con el Artículo 39, hasta el momento de la transmisión, sin perjuicio del derecho del adquirente a repetir contra el otro otorgante, por las cantidades que hubiese pagado como deudor solidario. **Sin embargo, un adquirente involuntario será responsable solamente de las deudas por gastos comunes surgidas y no satisfechas durante los <u>seis meses anteriores al momento de adquirir la propiedad</u>.** (Énfasis nuestro).[15]

Ahora bien, a pesar de la evolución del Art. 41, *supra*, para fines del caso ante nuestra consideración, la norma y las expresiones que realizamos en <u>Asociación de Condómines v. Naveira</u>, *supra*, son más que ilustrativas. En primer lugar, dictaminamos que un comprador, un donatario, un permutante o un licitador que se lleva la buena pro en la subasta es un adquirente voluntario.[16] En contraparte,

---

> La referida obligación será exigible a quien quiera que sea titular de la propiedad que comprende el apartamento, aun cuando el mismo no haya sido segregado e inscrito como finca filial en el Registro de la Propiedad, o enajenado a favor de persona alguna. (Énfasis nuestro).

[15] Art. 41 de la Ley de Condominios, 31 LPRA sec. 1293e (Art. 41).

[16] Íd., pág. 96.

definimos que un adquirente involuntario, son "aqu[é]llos que advienen dueños del apartamiento al ejercer los créditos preferentes" del Art. 40 de la Ley de Condominios, 31 LPRA sec. 1293d (Art. 40).[17] Es decir, (1) el Estado, (2) las aseguradoras y (3) los créditos hipotecarios.[18] Aunque luego abordaremos el efecto del Art. 40, *supra*, sobre el adquirente involuntario, por definición, esta figura jurídica la limitamos al Estado, porque es titular de los intereses del Pueblo y en cuanto a las aseguradoras y a los acreedores hipotecarios porque "son fuentes de crédito que resultan imprescindibles para la construcción y existencia de edificios sujetos al régimen de propiedad horizontal".[19]

Por otro lado, expusimos el interés disímil entre el adquirente voluntario y el involuntario de la siguiente manera:

> El **voluntario** es un comprador que bien informado de los gravámenes y cargas del apartamiento **lo adquiere porque <u>es un buen negocio</u>**. El adquirente **involuntario** es <u>**originalmente un acreedor**</u> cuyo <u>**interés fundamental**</u> no es hacerse dueño del apartamiento sino **<u>proteger su acreencia</u>** constituida usualmente antes de que empiece a acumularse la deuda por gastos comunes del condominio. El adquirente voluntario tiene oportunidad y medios de enterarse de la deuda por gastos comunes del condominio y poder de decisión para asumirlos como gravamen del

---

[17] 31 LPRA sec. 1293d.

[18] *Asociación de Condómines v. Naveira*, 106 DPR 88, 97 (1977). Es importante señalar que, debido a la inexistencia de la figura de adquirente involuntario, la exención de la responsabilidad solidaria reconocida era por la totalidad de las cuotas de mantenimiento adeudadas.

[19] <u>Vázquez Morales v. Caguas Federal Savs</u>. 118 DPR 806, 809 (1987).

inmueble que adquiere. Para el adquirente involuntario, acreedor en uno de los tres casos del Art. 40, dicha deuda no es elemento u objeto de contratación y su acreencia no debe sufrir disminución porque el deudor incumpla otra obligación ajena y extraña a la suya. Bajo ninguna circunstancia sería equitativo exigir esa deuda […] al acreedor hipotecario que ejecuta para recobrar el principal y los intereses pactados.[20]

**III**

Tras cuestionarnos si la recurrida es un adquirente voluntario o involuntario, destacamos que la importancia entre uno y el otro no radica, principalmente, en el momento de la adquisición del crédito hipotecario o del inmueble, sino **la razón para adquirir o el interés fundamental por la cual se convierte en titular**.

Al respecto, el profesor Michel Godreau advierte que "lo definitorio al clasificar al acreedor ejecutante como adquirente involuntario radica en si el acreedor hipotecario realiza un negocio lucrativo con la adquisición de la propiedad, o si con dicha adquisición lo único que logra es proteger su acreencia".[21] Ambas figuras jurídicas contienen unas particularidades que nos permiten delimitar su clasificación. Las características de un adquirente voluntario son las siguientes: (1) puede ser un comprador, un donatario, un permutante, o aquél que se lleva la buena pro en una subasta pública, (2) adquiere el crédito hipotecario o el apartamiento con el ánimo de

---

[20] Asociación de Condómines v. Naveira, *supra*, pág. 97.

[21] M.J. Godreau, *El condominio: El régimen de propiedad horizontal en Puerto Rico*, San Juan, Segunda Ed. Situm, 2019, pág. 311.

hacer un buen negocio, (3) tiene la "oportunidad y [los] medios de enterarse de la deuda por gastos comunes del condominio[, y (4) el] poder de decisión para asumirlos como gravamen del inmueble que adquiere".[22]

Asimismo, recientemente resolvimos que, aun cuando la intención de una institución financiera es proteger su garantía hipotecaria, se considera un adquirente voluntario el acreedor hipotecario que, deliberadamente o por un acto volitivo, se convierte en titular del inmueble mediante un contrato de dación en pago.[23]

En resumen, para el adquirente voluntario "su razón de adquirir [es] **un acto volitivo dictado por su propia conveniencia en el campo de los negocios** y, por tanto, no puede invocar la preferencia que el Art. 40(c) reserva al dueño de un crédito hipotecario",[24] así como tampoco le asiste la protección del Art. 41, *supra*, diseñada para quien forzosamente se convierte en titular de la propiedad. (Énfasis nuestro).

Por otro lado, distinto al voluntario, un adquirente involuntario tiene los siguientes elementos: (1) es un acreedor hipotecario,[25] (2) la razón o interés fundamental

---

[22] M.J. Godreau, *El condominio: El régimen de propiedad horizontal en Puerto Rico*, San Juan, Segunda Ed. Situm, 2019, pág. 311.

[23] Coop. Oriental v. Cons. Tit. Cond. Beach Village, 195 DPR 330 (2016).

[24] Asociación de Condómines v. Naveira, supra, pág. 95.

[25] Debemos aclarar que en Asociación de Condómines v. Naveira, *supra*, este Tribunal no atendió en los méritos el efecto de la prelación de créditos del Art. 40 de la Ley de Propiedad Horizontal, 31 LPRA sec. 1293d ni la exención de la responsabilidad solidaria con el deudor de las cuotas de mantenimiento. No obstante, **reconoció el efecto del Art.**

no es convertirse en dueño del inmueble, sino proteger su acreencia constituida -usualmente- antes de que empiece acumularse la deuda de las cuotas por mantenimiento, (3) para él, la "deuda no es elemento u objeto de contratación[,] y [4] su acreencia no debe sufrir disminución porque el deudor incumpla otra obligación ajena y extraña a la suya".[26]

Estas características, a su vez, inciden o se relacionan con el orden de prelación que establece el Art. 40, *supra*. Con relación a los créditos preferentes, en Asociación de Condómines v. Naveira, *supra*, apuntamos que:

> El Art. 40 es explícito en lo relativo a la prelación del crédito hipotecario, reconociendo preferencia sobre éste únicamente [al Estado y a las aseguradoras]. En cierto aspecto importante este Artículo es una representación a inversionistas y financiadoras de condominios de que la garantía de su dinero no será disminu[i]da por las cuotas de mantenimiento impagadas que acumule el deudor hipotecario. **De otro modo se introduciría un nuevo elemento o factor en el financiamiento de inmuebles que haría más oneroso la obtención de crédito por el comprador de vivienda en condominio.** Es realidad notoria que en Puerto Rico la inmensa mayoría de apartamientos en condominio se adquieren mediante facilidades de crédito aseguradas con hipoteca, y todo lo que restrinja o encarezca este mercado de hipotecas habrá de reducir indefectiblemente la capacidad de los compradores para adquirir una vivienda. Se deduce de ello la razón del legislador al no postergar la hipoteca a la responsabilidad por cuotas de mantenimiento devengadas con posterioridad al gravamen real preferente y cuyo importe es impredecible en el momento de

---

**40,** *supra*, **sobre el adquirente involuntario y que la exención de la responsabilidad solidaria le corresponde al** primer acreedor hipotecario **como adquirente accidental.** Íd., pág. 98.

[26] Asociación de Condómines v. Naveira, *supra*, pág. 97.

constitución del crédito hipotecario. El comprador convencional pacta y acuerda el precio conociendo el total exacto de las cuotas adeudadas, por las que habrá de asumir responsabilidad. Para el acreedor hipotecario esa deuda no es elemento contractual simplemente porque no existe al tiempo de constituirse la hipoteca que garantiza el precio de compra. (Énfasis nuestro).[27]

De una lectura detenida de este caso normativo y de la evolución del Art. 41, *supra*, es claro que los créditos hipotecarios a los que se refiere el Art. 40(c), *supra*, son aquéllos cuyo acreedor es el banco o institución financiera que facilitó la adquisición de un apartamiento en condominio y que, como regla general, la deuda por las cuotas de mantenimiento no existía al momento de la constitución de la hipoteca que garantizó el precio de compra.[28]

Con ésta y la siguiente explicación contestamos las inquietudes señaladas por el profesor Michel Godreau al cuestionar lo siguiente:

¿Es adquirente involuntario quien compra créditos hipotecarios a precios irrisorios aprovechándose de la depresión económica conocida? Me parece que ese acreedor hipotecario no merece la protección que otorga la Ley de Condominios *vis à vis* el interés muy especial que representan los condominios en nuestra sociedad. ¿Es justo que el único criterio que prevalezca frente a ese acreedor buitre sea el

---

[27] Asociación de Condómines v. Naveira, *supra*, n. 4, pág. 98.

[28] Valga señalar que, al momento en que decidimos el caso Asociación de Condómines v. Naveira, *supra*, la exención de la solidaridad que disponía el Art. 41, *supra*, era de todas las cuotas de mantenimiento pendientes. Recuérdese que la figura de adquirente involuntario no existía hasta ese entonces y, por ende, la legislación no establecía un mínimo de cuotas de mantenimiento por la cual un adquirente accidental tendría que responder.

de si se adquiere el apartamiento luego de una subasta?[29]

No podemos avalar que la sola compra de un crédito hipotecario (indistintamente del momento en que se adquiera) o la mera adjudicación accidental de una propiedad en pública subasta le extienda la facultad de invocar la protección del adquirente involuntario a una compañía que adquirió por "**un acto volitivo dictado por su propia conveniencia en el campo de los negocios**".[30]

Ciertamente, la clasificación del tipo de adquirente es trascendental para la convivencia en el régimen de propiedad horizontal. **Cuando se configura el adquirente involuntario, los condóminos terminan absorbiendo y financiando las cuotas de mantenimiento que por ley un banco quedó exento de pagar.** Esto es razón suficiente para que un condominio no se cruce de brazos y utilice las herramientas que le provee la Ley de Condominios para la efectividad del cobro de las cuotas de mantenimiento. Por el contrario, cuando estamos ante un adquirente voluntario, prevalece la política pública de robustecer la vida en comunidad en la medida en que el nuevo titular está obligado a responder por las cuotas de mantenimiento impagadas, sin perjuicio de su derecho a repetir en contra del deudor por la cantidad que hubiese pagado. **Por tanto, constituye un comprador convencional y, por ende, un**

---

[29] M.J. Godreau, *El condominio: El régimen de propiedad horizontal en Puerto Rico*, San Juan, 2da Ed. Situm, 2019, pág. 311.

[30] Asociación de Condómines v. Naveira, *supra*, pág. 95.

**adquirente voluntario quien se dedique a la compra deliberada de créditos hipotecarios de una institución financiera que, a su vez, como ejecutante se le adjudique accidentalmente el inmueble en pública subasta.**[31]

**IV**

El planteamiento reiterado del Condominio es que la recurrida es una compañía que, entre otros asuntos, se dedica a la compra y venta de bienes muebles e inmuebles, sentencias, créditos litigiosos con propósitos especulativos o de inversión para aumentar sus ganancias y, como parte del curso normal de su negocio, **no es una institución financiera que para recobrar el dinero prestado utiliza el procedimiento ejecutivo.** El Condominio afirma que la evidencia que acreditaba la adquisición de las propiedades en públicas subastas no demostraba cómo fueron adquiridas. Por ende, a la recurrida no le asiste la protección diseñada para el adquirente involuntario.

Entretanto, la recurrida expone que, indistintamente de la naturaleza de su negocio, adquirió las propiedades mediante el procedimiento ejecutivo, que las subastas

_____

[31] Es importante señalar que lo resuelto es compatible con la enmienda al Art. 41, _supra_, mediante la aprobación de la Ley Núm. 119-2016. En lo pertinente, esta legislación añadió dos asuntos importantes, a saber: que, (1) además de la responsabilidad limitada de los seis meses, el adquirente involuntario pagará el balance corriente desde la adquisición del inmueble, y (2) delimitó que un adquirente involuntario es "el acreedor hipotecario que en cobro de su crédito adquiere un inmueble sujeto a esta Ley, el cual pagará mensualmente o en el término establecido por el Consejo de Titulares". La Ley Núm. 119, _supra_, se aprobó el 5 de agosto de 2016, luego que este Tribunal expidiera el recurso de _certiorari_ el 29 de abril de 2016.

públicas le fueron adjudicadas y, por ello, debe considerarse como adquirente involuntario.

Luego de evaluar ambas posiciones, no albergamos duda de que la recurrida intenta lucrarse mediante la compra deliberada de créditos hipotecarios y que, por ende, la posterior venta le resulte en un aumento de sus ganancias, es decir en un buen negocio. La recurrida tiene la oportunidad y medios para enterarse del monto de la deuda y el poder de decisión para asumirla. Peor aún, si la compra del crédito hipotecario hubiese constituido un "mal negocio" era con fines lucrativos provocado por la recurrida. Por tanto, la mera adjudicación de las propiedades en las terceras subastas públicas declaradas desiertas -como medio de adquisición- no puede utilizarse como escudo o subterfugio para invocar la protección del Art. 41, *supra*, diseñada por ley para una institución financiera que viabiliza la compra de un apartamiento en el régimen de propiedad horizontal y, por ende, la prelación del Art. 40(c), *supra*. En fin, la recurrida se montó deliberadamente en ese tren y como adquirente voluntario tiene la obligación de responderle al Condominio por las cuotas de mantenimiento impagadas por el deudor.

Por todo lo anterior, la recurrida es responsable solidariamente del pago de todas las cuotas de mantenimiento adeudadas al momento en que adquirió los

inmuebles. Por tanto, el foro de instancia erró al desestimar la *Demanda Enmendada*.

**V**

Por los fundamentos antes expuestos, se revoca la Sentencia del Tribunal de Apelaciones como el dictamen del Tribunal de Primera Instancia conforme a lo aquí resuelto.

Se dictará sentencia de conformidad.

Erick V. Kolthoff Caraballo
*Juez Asociado*

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

Condominio First Federal
Savings

    Peticionario

       v.

LSREF2 Island Holdings
LTD, Inc.

    Recurrido

**CC-2016-0174**

**SENTENCIA**

San Juan, Puerto Rico, a 23 de julio de 2019.

Por los fundamentos antes expuestos en la Opinión que antecede la cual se hace formar parte íntegra de la presente, se revoca la Sentencia del Tribunal de Apelaciones como el dictamen del Tribunal de Primera Instancia conforme a lo aquí resuelto.

Así lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez y el Juez Asociado señor Colón Pérez, no intervinieron.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo