Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| CONSEJO DE TITULARES DEL CONDOMINIO FIRST FEDERAL SAVINGS<br><br>Apelada<br><br>v.<br><br>EDGAR FRANCISCO MORALES RAMÍREZ<br><br>**LION CREST INVESTMENTS, LLC**<br><br>Apelante | KLAN202301011 | APELACIÓN, **acogido como *Certiorari*,** Procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2023CV02677<br><br>Sobre: Cobro de Dinero, Incumplimiento de Contrato |

Panel integrado por su presidenta, la Juez Brignoni Mártir, el Juez Candelaria Rosa, la Jueza Álvarez Esnard y la Jueza Díaz Rivera

Álvarez Esnard, jueza ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 22 de enero de 2024.

Comparece ante nos Lion Crest Investment, LLC ("Lion Crest" o "Peticionario") mediante escrito intitulado *Recurso de Apelación* presentado el 10 de noviembre de 2023. Nos solicita que revoquemos la *Sentencia* emitida el 26 de julio de 2023 y enmendada el 10 de agosto de 2023, por el Tribunal de Primera Instancia, Sala Superior de San Juan ("foro primario" o "foro *a quo*"). Por virtud de la misma, el foro primario declaro *Ha Lugar* la demanda de cobro de dinero instada por el Consejo de Titulares del Condominio First Federal Savings ("Consejo de Titulares" o "Recurrido") y condenó al Peticionario y al señor Edgar Francisco Morales Ramírez ("Sr. Morales Ramírez") a pagar la suma de $93,819.21. Inconforme con la determinación, Lion Crest solicitó

reconsideración y/o relevo de sentencia, la cual fue declarada *No Ha Lugar* mediante *Resolución* emitida y notificada el 11 de octubre de 2023.[1]

Por los fundamentos expuestos a continuación, **denegamos** la expedición del auto de *certiorari.*

## I.

La controversia ante nuestra consideración tiene su origen cuando el 24 de marzo de 2023 el Consejo de Titulares incoó una *Demanda* sobre cobro de dinero de las cuotas de mantenimiento de un apartamento comercial contra el Peticionario y el Sr. Morales Ramírez.[2] En síntesis, el Consejo de Titulares alegó que el Sr. Morales Ramírez adquirió la oficina 619 del Condominio First Federal Savings y posteriormente, dicha oficina fue adquirida por Lion Crest. Señaló que, a la fecha de la radicación de la demanda, el Peticionario y el Sr. Morales Ramírez adeudaban la suma de $93,819.21, por concepto de cuotas de mantenimiento vencidas y no pagadas, más intereses y penalidades. Sostuvo que la deuda estaba vencida, era líquida y exigible, por lo que, solicitó que decretara el embargo preventivo de los bienes de los deudores y que se condenara a los demandados a sufragar solidariamente las cuantías reclamadas.[3]

Transcurridos varios trámites que son inmeritorios reseñar, el 26 de julio de 2023, notificada el 1 de agosto del mismo año, el foro primario emitió *Sentencia.*[4] Mediante esta, el foro *a quo* dictó

---

[1] En vista de que el foro primario acogió la solicitud del Peticionario como una de relevo de sentencia al amparo de la Regla 49.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 49.2, acogemos el recurso de epígrafe como un *certiorari* por ser lo procedente en derecho, aunque por razones de economía procesal conserve la designación alfanumérica (KLAN202301011). Véase *IG Builders v. BBVAPR*, 185 DPR 307 (2012).
[2] Apéndice recurso, Anejo 4, págs. 21-25.
[3] Cabe destacar que el 17 de mayo de 2023, se diligenció emplazamiento mediante entrega personal a Lion Crest. Véase Apéndice Recurrido, págs. 8-9.
[4] Apéndice recurso, Anejo 5, pág. 26.

sentencia en rebeldía declarando *Ha Lugar* la demanda instada por el Consejo de Titulares. En consecuencia, condenó al Sr. Morales Ramírez al pago de la suma de $93,819.21, más intereses del tipo legal sobre dicha cantidad, contados a partir de la fecha de la radicación de la demanda hasta su completo pago. En cuanto a Lion Crest, el foro primario expresó lo siguiente:

> Por último, examinados los autos, surge que a esta fecha ha transcurrido el término de 120 días dispuesto por la Regla 4.3 de Procedimiento Civil de Puerto Rico sin que se haya acreditado el diligenciamiento de los emplazamientos por la parte demandante a los demandados Lion Crest Investments, LLC. Ante esta realidad, **el Tribunal carece de jurisdicción en cuanto a esta, por lo que se desestima, sin perjuicio dicha reclamación, toda vez que no tenemos discreción para prorrogar el término para emplazar** a base de lo resuelto en *Bernier González v. Rodríguez Becerra,* 200 DPR 637 (2018). (Énfasis nuestro).

Así las cosas, el 10 de agosto de 2023, el Consejo de Titulares presentó *Moción de Reconsideración.*[5] En esta, llamó a la atención al foro primario de que se había diligenciado el emplazamiento al Peticionario mediante entrega personal, dentro del término dispuesto en ley. Por lo cual, solicitó que reconsiderara la determinación de desestimar sin perjuicio la demanda contra Lion Crest.

El mismo 10 de agosto de 2023, notificada el 15 del mismo mes y año, el foro primario emitió *Sentencia Enmendada,* a los fines de incluir a Lion Crest en los efectos de la sentencia. En consecuencia, se le anotó la rebeldía al Peticionario y condenó a los codemandados a sufragar solidariamente la cantidad de $93,819.21 al Consejo de Titulares. En vista de que una de las partes codemandadas se le había anotado la rebeldía, el 15 de agosto de 2023, la Secretaría del foro primario emitió *Notificación de Sentencia por Edicto por SUMAC.* Posteriormente, el 28 de

---

[5] Apéndice Recurrido, págs. 12-13.

agosto de 2023, el Consejo de Titulares presentó *Moción Informativa en Torno a Publicación de Edicto.* Mediante esta, informó que el 24 de agosto de 2023 se publicó el edicto.[6]

En desacuerdo con la *Sentencia Enmendada,* el 11 de septiembre de 2023, Lion Crest instó *Solicitud de Reconsideración y Asumiendo Representación,* en la que alegó que el Consejo de Titulares no le había notificado los escritos presentados en el caso, ni el foro primario le había enviado notificación escrita de sus determinaciones.[7] A su vez, solicitó, al amparo de la Regla 49.2 de Procedimiento Civil, 32 LPRA Ap. V., R.49.2, que se le relevara de la sentencia dictada en su contra, toda vez que era un adquirente involuntario y sólo venía obligado a pagar los últimos seis (6) meses de atraso de las cuotas de mantenimiento de la propiedad.

En respuesta, el Consejo de Titulares presentó *Oposición a Solicitud de Reconsideración.*[8] Por virtud de esta, señalo que la solicitud de reconsideración fue presentada tardíamente. En cuanto a la solicitud de relevo de sentencia, sostuvo que no procede el relevo de sentencia puesto que Lion Crest es un adquirente voluntario.

En vista de ello, el 11 de octubre de 2023, el foro primario emitió y notificó *Resolución,* en la que acogió los planteamientos de la oposición a la solicitud de reconsideración presentada por el Consejo de Titulares y declaró *No Ha Lugar* la petición del Peticionario.

---

[6] Véase entradas números 19 y 20 del expediente electrónico del Sistema Unificado de Manejo y Administración de Casos ("SUMAC"), en el caso SJ2023CV02677.

[7] Apéndice recurso, Anejo 7, págs. 28-35.

[8] *Íd.,* Anejo 8, págs. 35-52.

Inconforme aún, el 10 de noviembre de 2023, Lion Crest acudió ante esta Curia y le imputó al foro primario la comisión de los siguientes errores:

> Erró el Tribunal de Primera Instancia al declarar en rebeldía y modificar sentencia contra la parte apelante sin haber notificado a esta luego de haber desestimado en su contra.
>
> Erró el Tribunal de Primera Instancia al determinar que Lion Crest es deudor solidario con el codemandado Morales Ramírez en cuanto al pago de la totalidad de la deuda reclamada ya que Lion Crest es un adquiriente involuntario y no surge de ningún documento la solidaridad entre las partes.

El 16 de noviembre de 2023, esta Curia emitió *Resolución* en la que le concedió un término de treinta (30) días a la parte Recurrida para que presentara su oposición al recurso. En cumplimiento con lo ordenado, el 18 de diciembre de 2023, el Consejo de Titulares presentó *Alegato en Oposición a Apelación y/o Certiorari.*

Con el beneficio de la comparecencia de ambas partes, procedemos a exponer la normativa jurídica aplicable al caso ante nuestra consideración.

## II.

### *A. Certiorari*

"[U]na resolución u orden interlocutoria, distinto a una sentencia, es revisable mediante *certiorari* ante el Tribunal de Apelaciones". *JMG Investment v. ELA et al.*, 203 DPR 708, 718 (2019). "El recurso de *certiorari* es un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un foro inferior". *800 Ponce de León v. AIG,* 205 DPR 163, 174 (2020). Véase, además, *Torres González v. Zaragoza Meléndez,* 211 DPR ___ (2023); 2023 TSPR 46, resuelto el 12 de abril de 2023.

No obstante, la discreción del tribunal apelativo en este aspecto no opera en un vacío ni sin parámetros. *Mun. de Caguas v. JRO Construction*, 201 DPR 703, 712 (2019). La Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, señala los criterios que se deben tomar en consideración al evaluar si procede expedir un auto de *certiorari*. Véase, además, *Banco Popular de Puerto Rico v. Gómez Alayón y otros*, 213 DPR __ (2023); 2023 TSPR 145, resuelto el 19 de diciembre de 2023. Estos criterios son:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

El Tribunal Supremo ha expresado que la discreción es "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Mun. de Caguas v. JRO Construction, supra*, págs. 712-713.

### B. Relevo de Sentencia

La Regla 49.2 de Procedimiento Civil, 32 LPRA Ap. V, R.49.2, dispone que una parte puede solicitar que el tribunal la releve de los efectos de una sentencia. Lo anterior, procederá cuando ocurra alguna de las siguientes circunstancias excepcionales:

(a) error, inadvertencia, sorpresa o negligencia excusable;

(b) descubrimiento de evidencia esencial que, a pesar de una debida diligencia, no pudo haber sido descubierta a tiempo para solicitar un nuevo juicio de acuerdo con la Regla 48;

(c) fraude (incluso el que hasta ahora se ha denominado "intrínseco" y el también llamado "extrínseco"), falsa representación u otra conducta impropia de una parte adversa;

(d) nulidad de la sentencia;

(e) la sentencia ha sido satisfecha, renunciada o se ha cumplido con ella, o la sentencia anterior en que se fundaba ha sido revocada o de otro modo dejada sin efecto, o no sería equitativo que la sentencia continúe en vigor, o

(f) cualquier otra razón que justifique la concesión de un remedio contra los efectos de una sentencia.

Este mecanismo post sentencia, tiene el propósito de proveer un justo balance entre dos intereses conflictivos de nuestro ordenamiento jurídico. "Por un lado, se encuentra el principio de que todo caso se resuelva justamente, mientras que por otro lado se encuentra el interés de que los litigios concluyan." *HRS Erase v. CMT*, 205 DPR 689 (2020), citando a *García Colón et al. v. Sucn. González,* 178 DPR 527, 540 (2010). Por ello, el Tribunal Supremo ha reiterado que la Regla 49.2 de Procedimiento Civil*, supra,* debe "interpretarse liberalmente y cualquier duda debe resolverse a favor del que solicita que se deje sin efecto una anotación de rebeldía o una sentencia". *HRS Erase v. CMT, supra,* citando *Díaz v. Tribunal Superior*, 93 DPR 79, 87 (1966).

Ahora bien, es menester señalar que los tribunales tienen la discreción de sopesar estos factores y determinar si procede relevar a una parte de los efectos de una sentencia. *Íd,* citando a *Náter v. Ramos,* 162 DPR 616, 624 (2004). Además, el promovente de la solicitud de relevo de sentencia deberá presentarla "dentro de un término razonable, pero en ningún caso después de transcurridos seis (6) meses de haberse registrado la sentencia".

Regla 49.2 de Procedimiento Civil, *supra*. No obstante, tales normas ceden cuando se trata de una sentencia que adolece de nulidad o cuando la sentencia ha sido satisfecha. *HRS Erase v. CMT, supra,* citando *Rivera v. Algarín,* 159 DPR 482, 490 (2003). Sin embargo, la consabida regla no constituye una llave maestra para reabrir controversias, ni sustituye los recursos de apelación o reconsideración. Es decir, el precepto no está disponible para alegar cuestiones sustantivas que debieron ser planteadas mediante los recursos de reconsideración y apelación. *García Colón et al. v. Sucn. González,* supra, pág. 541.

> Sobre ello, nuestro máximo foro ha resuelto lo siguiente:
>
> [...] una interpretación liberal de la regla permite que se considere una moción de reconsideración como una de relevo de sentencia. Esto aunque haya transcurrido el término para considerar la reconsideración o aun después de que haya advenido final y firme la sentencia, siempre y cuando la referida moción cumpla estrictamente con los requisitos establecidos en dicha regla. Es decir, una moción de reconsideración que aduzca los fundamentos subsumidos en la Regla 49.2 de Procedimiento Civil, supra, puede ser considerada como una moción de relevo de sentencia, aun si es presentada después de los quince días. *García Colón et al. v. Sucn. González, supra,* pág. 541.

De otro lado, si una parte solicita el relevo de sentencia al amparado en el inciso (4) de la Regla 49.2 de Procedimiento Civil, *supra,* y demuestra que la sentencia es nula, el foro primario no tendrá discreción para denegar la misma. "[S]i una sentencia es nula, tiene que dejarse sin efecto independientemente de los méritos que pueda tener la defensa o la reclamación del perjudicado". *HRS Erase v. CMT, supra,* citando a *García Colón et al. v. Sucn. González, supra,* págs. 543-544. "[C]uando una sentencia es nula, se tiene por inexistente, por lo que no surte efecto alguno". *López García v. López García,* 200 DPR 50, 62 (2018). "[A]nte la certeza de nulidad de una sentencia, resulta mandatorio declarar su inexistencia jurídica; ello independientemente del hecho de que la solicitud a tales

efectos se haga con posterioridad a haber expirado el plazo de seis (6) meses". *HRS Erase v. CMT, supra,* citando a *Montañez v. Policía de P.R.,* 150 DPR 917 (2000). Así, que la parte promovente no está limitada por el término de seis (6) meses dispuesto en la Regla 49.2 de Procedimiento Civil.

> Sobre ello, nuestro máximo foro ha expresado lo siguiente:
>
> El esquema amplio y abarcador de remedios que provee la Regla 49.2 reduce considerablemente el ejercicio de esta acción independiente a los casos en que ha transcurrido el término fatal de seis meses y **las circunstancias sean de tal índole que el tribunal pueda razonablemente concluir que mantener la sentencia constituiría una grave injusticia contra una parte que no ha sido negligente en el trámite de su caso y que, además, tiene una buena defensa en los méritos**. (Énfasis nuestro). *Figueroa v. Banco de San Juan,* 108 DPR 680, 689 (1979).

De igual modo, se considera que una sentencia es nula cuando el tribunal actuó sin jurisdicción o cuando se quebrantó el debido proceso de ley de alguna de las partes. *HRS Erase v. CMT, supra,* citando a *García Colón et al. V. Sucn. González, supra,* pág. 543. Cuando se alega que la nulidad de la sentencia por alguna violación al debido proceso de ley, el profesor Rafael Hernández Colón señaló que el "[q]uebrantamiento del debido proceso de ley es un concepto mucho más amplio y pueden haber tantas manifestaciones del mismo como principios del debido proceso existen y que se hayan quebrantado en un caso en especial". R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil,* 5ta ed., San Juan, Ed. Lexis Nexis, 2010, sec. 4807, pág. 408. Así que, se ha resuelto que la ausencia de una parte indispensable es una violación al debido proceso de ley que conlleva obligatoriamente el relevo de la sentencia. *HRS Erase v. CMT, supra,* citando a *García Colón et al. V. Sucn. González, supra,* pág. 551.

### C. *Adquirente Voluntario e Involuntario*

La figura del adquirente voluntario o involuntario ha sido definida por el Tribunal Supremo de la siguiente manera:

> [e]l [adquirente] voluntario es un comprador que bien informado de los gravámenes y cargas del apartamento lo adquiere porque es un buen negocio. El adquirente involuntario es originalmente un acreedor cuyo interés fundamental no es hacerse dueño del apartamento sino proteger su acreencia constituida usualmente antes de que empiece a acumularse la deuda por gastos comunes del condominio. *Con. Tit. Centro Int'l Torre II v. PRCI,* 210 DPR 403 (2022), citando a *Asoc. Condómines v. Naveira,* 106 DPR 88, 97 (1977).

Asimismo, se ha establecido que un adquirente voluntario:

> (1) puede ser un comprador, un donatario, un permutante o aquel que se lleva la buena pro en una subasta pública; (2) quien adquiere el crédito hipotecario o el apartamento con el ánimo de hacer un buen negocio; (3) quien tiene la oportunidad y los medios de enterarse de la deuda por gastos comunes del condominio, y (4) quien tiene el poder de decisión para asumirlos como gravamen del inmueble que adquiere. *Íd,* citando a *Condominio First Federal v. LSREF2,* 202 DPR 934, 944-945 (2019); *Asoc. de Condómines v. Naveira, supra,* pág. 97.

Por el contrario, el adquirente involuntario posee las siguientes características:

> (1) es un acreedor hipotecario; (2) la razón o el interés fundamental no es convertirse en dueño del inmueble, sino proteger su acreencia constituida --usualmente-- antes de que empiece a acumularse la deuda de las cuotas por mantenimiento; (3) para este, la deuda no es elemento u objeto de contratación, y (4) su acreencia no debe sufrir disminución porque el deudor incumpla otra obligación ajena y extraña a la suya. *Íd.*

Otra fuente de derecho que establece una distinción entre la figura del adquirente voluntario e involuntario está contenida en la *Ley de Condominios de Puerto Rico*, Ley Núm. 129 de 16 de agosto de 2020, según enmendada, ("Ley 129-2020"), dispone lo siguiente:

> b) Adquiriente Involuntario – El acreedor hipotecario que, **para proteger su acreencia**, adquiera una propiedad como parte de un proceso de ejecución de hipoteca, licitando o sin licitar, o de dación en pago, total o parcial.

c) Adquiriente Voluntario – Persona que, luego de ejercer su criterio en el curso usual de los negocios, **deliberadamente** adquiere el bien inmueble porque le resulta un buen negocio. Se entiende que incluye a un comprador convencional, un donatario, un heredero, un legatario, un permutante o un licitador que se lleva la buena pro en la subasta. 31 LPRA sec. 1921b (b) y (c). (Énfasis nuestro).

En cuanto a los pagos de las cuotas de mantenimiento de un condominio sujeto al régimen de propiedad horizontal, el Artículo 60 de la precitada Ley 129-2020, *supra,* establece lo siguiente:

La obligación del titular de un apartamento por su parte proporcional de los gastos comunes constituirá un gravamen sobre dicho apartamento. Por lo tanto, luego de la primera venta, **el <u>adquirente voluntario</u> de un apartamento <u>será solidariamente responsable</u> con el transmitente del pago de las sumas que éste adeude, a tenor con el Artículo 59, hasta el momento de la transmisión, sin perjuicio del derecho del adquirente a repetir contra el otro otorgante, por las cantidades que hubiese pagado como deudor solidario. Un <u>adquirente involuntario</u> será responsable solamente de las deudas por gastos comunes surgidas y no satisfechas durante los seis (6) meses anteriores al momento de adquirir la propiedad** excepto las partidas correspondientes a penalidades por atrasos o mora, derramas, intereses y sanciones atribuibles al titular, incluirá el balance corriente que se acumule desde la adquisición de dicho inmueble por parte del adquiriente involuntario.
(Énfasis y subrayado nuestro). 31 LPRA sec. 1923e.[9]

Al hacer la distinción entre un adquirente voluntario y uno involuntario lo primordial yace en el interés por el cual se adquiere la propiedad. *Con. Tit. Centro Int'l Torre II v. PRCI, supra.* **La búsqueda de dicho interés "no radica, principalmente, en el momento de la adquisición del crédito hipotecario o del**

---

[9] El Artículo 41 de la derogada *Ley de Condominios de 2003*, Ley Núm. 104 de 25 de junio de 1958, disponía lo siguiente:
La obligación del titular de un apartamiento por su parte proporcional de los gastos comunes constituirá un gravamen sobre dicho apartamiento, una vez anotado en el Registro de la Propiedad. Por lo tanto, luego de la primera venta, el adquirente voluntario de un apartamiento será solidariamente responsable con el transmitente del pago de las sumas que éste adeude, a tenor con el Artículo 39, hasta el momento de la transmisión, sin perjuicio del derecho del adquirente a repetir contra el otro otorgante, por las cantidades que hubiese pagado como deudor solidario. Sin embargo, un adquirente involuntario será responsable solamente de las deudas por gastos comunes surgidas y no satisfechas durante los seis meses anteriores al momento de adquirir la propiedad. 31 LPRA sec. 1293e.

**inmueble, sino en la razón para adquirir o el interés fundamental por el cual se convierte en titular".** *Íd*, citando a *Condominio First Federal v. LSREF2, supra.* (Énfasis nuestro).

"[A]un cuando la intención de una institución financiera es proteger su garantía hipotecaria, **se considera un adquirente voluntario al acreedor hipotecario que, deliberadamente o por un acto volitivo, se convierte en titular del inmueble mediante dación en pago".** (Énfasis suplido). *Íd.* A su vez, nuestro Máximo Foro ha resuelto que los créditos hipotecarios contra cualquier titular que son preferentes "son aquellos cuyo acreedor es el banco o institución financiera que facilitó la adquisición de un apartamento en condominio y que, como regla general, **la deuda por cuotas de mantenimiento no existía al momento de la constitución de la hipoteca que garantizó el precio de compra".** (Énfasis nuestro). *Íd*, págs. 947-948.

**III.**

Expuesto el marco jurídico y ponderados los argumentos presentados por ambas partes, acogemos la solicitud de la parte aquí Peticionaria como una solicitud de relevo de sentencia al amparo de la Regla 49.2 de Procedimiento Civil, *supra.* No obstante, luego de una revisión del expediente del caso de epígrafe, resolvemos que no se han producido las circunstancias que exijan nuestra intervención. Al amparo de los criterios que guían nuestra discreción no intervendremos en la determinación recurrida. En ausencia de abuso de discreción, este foro no debe intervenir con las determinaciones del foro primario. La parte Peticionaria no ha demostrado que el foro de instancia se excedió en el ejercicio de su discreción, ni que erró en la interpretación del derecho. Tampoco constató que el abstenernos de interferir

en la determinación recurrida constituiría un fracaso irremediable de la justicia, ni que la sentencia emitida por el foro primario ameritara nuestra intervención. Por tanto, procede que se deniegue el recurso de *certiorari* de epígrafe.

**IV.**

Por los fundamentos expuestos, **denegamos** la expedición del auto de *certiorari.*

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones