Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| ORIENTAL BANK<br><br>Parte Apelada<br><br>v.<br><br>ASOCIACIÓN DE RESIDENTES DE CIUDAD JARDÍN DE JUNCOS, INC.<br><br>Parte Apelante | TA2025AP00484 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso Núm.:<br>CG2024CV02038<br><br>Sobre:<br>Sentencia Declaratoria |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Bonilla Ortiz y la Jueza Martínez Cordero

**Ortiz Flores, Jueza Ponente**

## SENTENCIA

En San Juan, Puerto Rico, a 12 de diciembre de 2025.

Comparece ante este Tribunal de Apelaciones, la Asociación de Residentes de Ciudad Jardín de Juncos, Inc. (Asociación; apelante) y nos solicita que revoquemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Caguas (TPI) el 25 de septiembre de 2025 y notificada al día siguiente 26 de septiembre de 2025.

Adelantamos que, por los fundamentos que expondremos a continuación, confirmamos el dictamen apelado.

**I**

El 7 de junio de 2025, Oriental Bank (Oriental; apelado) instó una *Demanda* en la cual solicitó una sentencia declaratoria para que lo estableciera como adquirente involuntario del inmueble localizado en el Municipio de Juncos, con la siguiente descripción:

URBANA: SOLAR #102 de la URBANIZACI[Ó]N CIUDAD JARD[Í]N de Juncos, localizada en el Barrio Gurabo Abajo del municipio de Juncos, Puerto Rico con cabida superficial de 439.09 metros cuadrados. En lindes por el NORTE, en dos alineaciones distintas, en una distancia de 8.705 metros y en un arco de longitud de 1.707 metros con la Calle #7 de dicha Urbanización; por el SUR, en dos alineaciones distintas, en una distancia de 6.818 metros con el Solar #116 y en otra distancia de 22.513 metros con el Solar #117; por el ESTE, en una distancia de 23.077 metros con el Solar #103 y; por el

OESTE, en cuatro alineaciones distintas en una distancia de 16.524 metros, en un arco de longitud de 6.111 metros, otro arco de longitud de 6.499 metros y otro arco de longitud de 1.707 metros con la Calle Periferal de dicha Urbanización, todos estos solares y las calles pertenecientes al referido desarrollo urbano.--------------------------------------------------------

---El inmueble antes descrito contiene una casa de concreto diseñada para una sola familia. Este Solar est[á] afecto por Servidumbre de 1.52 metros en el lado Norte y por el Oeste a favor de la Junta Reglamentadora de Telecomunicaciones de Puerto Rico.-------------------------------------------------------------

---Finca #19016, inscrita al tomo Karibe de JUNCOS, Registro de la Propiedad de Caguas, Sección II. ---------------[1]

La Asociación presentó su contestación de la demanda, en la cual alegó que Oriental estaba al tanto de la deuda que tenía el inmueble por cuotas de mantenimiento y, aun así, adquirió la propiedad como resultado de una decisión voluntaria de negocios.[2]

Luego de comenzado el proceso de descubrimiento de prueba y posterior a la celebración de algunas vistas, el 27 de junio de 2025, Oriental Bank sometió una *Moción Solicitando Sentencia Sumaria* ante el TPI.[3] En el mencionado escrito, el apelado argumentó que la controversia no giraba en torno a hechos, sino que era una cuestión de estricto derecho y era determinar si Oriental era un adquirente involuntario del inmueble en cuestión. Sostuvo nuevamente que este era un adquirente involuntario porque obtuvo la propiedad en controversia mediante la fusión entre Oriental y Scotiabank. Por tanto, en virtud del Artículo 60 de la Ley de Condominios, 31 LPRA sec. 1921 *et seq*, solo era responsable de pagar las cuotas de mantenimiento de los seis (6) meses anteriores a la otorgación de la escritura por venta judicial. Oportunamente la Asociación se opuso a la referida moción y planteó que Oriental era un adquirente voluntario responsable por la totalidad de la deuda acumulada por concepto de cuotas de mantenimiento, puesto que había adquirido el inmueble mediante compra de un crédito hipotecario, lo cual representaba un acto volitivo, ya que se trata de una acción que exige consentimiento.[4]

---

[1] SUMAC, Entrada 1 en CG2024CV02038, pág. 2.
[2] SUMAC, Entrada 5 en CG2024CV02038.
[3] SUMAC, Entrada 53 en CG2024CV02038.
[4] SUMAC, Entrada 55 en CG2024CV02038.

Presentados los escritos, el 26 de septiembre de 2025, el TPI emitió una *Sentencia* final donde declaró Ha Lugar la solicitud de sentencia sumaria presentada por Oriental y, por consiguiente, estableció mediante sentencia declaratoria que Oriental Bank es un adquirente involuntario de la propiedad Núm. 102 de la Urb. Ciudad Jardín en Juncos.[5] En su dictamen identificó que los siguientes hechos no estaban en controversia:

1. El pasado 18 de diciembre de 2012 el deudor Samuel Ortiz Espinosa solicitó a HR Mortgage Corp. un préstamo para la compra de una residencia ubicada en 102 2 St. Ciudad Jardín de Juncos, Juncos, PR 00777.

2. El inmueble es parte de una urbanización cerrada con control de acceso y la parte demandada es la Asociación que cobra las cuotas de mantenimiento.

3. El préstamo fue originado por HR Mortgage Corp. y el 23 de enero de 2013 se otorgó ante notario Carmen L. Guerrero Tamayo la escritura de compraventa número 9, mediante la cual el Sr. Ortiz Espinosa adquirió la propiedad antes identificada.

4. Ese mismo día se otorgó la escritura de hipoteca número 32, ante el notario Reinaldo Segurola Pérez en garantía de un pagaré a favor de HR Mortgage Corp. por la cantidad de $170,289.00.

5. El 25 de enero de 2013, o sea 2 días después de otorgada las escrituras antes mencionadas, el originador del préstamo HR Mortgage Corp. cedió el pagaré hipotecario a Scotiabank de Puerto Rico en lo que se conoce como mercado secundario.

6. El 13 de diciembre de 2013 Scotiabank de Puerto Rico radicó demanda en cobro de dinero y ejecución de hipoteca en contra del deudor Samuel Ortiz Espinosa en el caso civil ECD2013-01582 ya que este incumplió con los términos y condiciones del préstamo.

7. El 21 de mayo de 2014 el Tribunal de Instancia dictó Sentencia en contra de Samuel Ortiz Espinosa en cobro de dinero y ejecución de hipoteca en el caso civil número ECD2013-1582.

8. El 31 de diciembre de 2019 Oriental y Scotiabank de Puerto Rico se fusionaron sobreviviendo Oriental.

9. Posterior a la fusión antes mencionada, Oriental procedió a radicar moción de sustitución de parte demandante, en

---

[5] SUMAC, Entrada 60 en CG2024CV02038.

el caso civil núm., ECD2013-01582, para informar sobre la fusión y que ahora el nombre corporativo del demandante es Oriental.

10. Oriental solicitó además la ejecución de la sentencia antes mencionada y el 21 de febrero de 2024 se llevó a cabo la segunda subasta siendo Oriental el licitador agraciado.

11. El 19 de marzo de 2024 Oriental, en protección de su acreencia, se otorgó la escritura de venta judicial.

12. Que Oriental en aras de proteger su acreencia, participó de manera involuntaria en procedimiento de ejecución de sentencia, la subasta pública y otorgación de la escritura de venta judicial.[6]

Además de lo anterior, el foro primario manifestó en su decisión que lo determinante para distinguir un adquirente voluntario de uno involuntario era el propósito para el cual se obtuvo el inmueble, entiéndase, si se hizo con la intención de permanecer como titular o no. Por tal motivo, concluyó que la apelada adquirió la propiedad inmueble mediante pública subasta para proteger su acreencia ya que este era el único medio que tenía disponible para proteger su acreencia, por lo que su intención no era permanecer como dueño de la propiedad.[7] De igual manera, expresó en cuanto al conocimiento de parte de Oriental sobre la deuda en cuotas de mantenimiento, que ello "no cambia el hecho de que Scotiabank y, posteriormente, Oriental actuaran en todo momento conforme a su posición de acreedor hipotecario, procurando recobrar el dinero que Samuel Ortiz Espinosa le adeudaba. De haber habido dicho conocimiento, ello no varió su posición ni su responsabilidad sobre la deuda de cuotas de mantenimiento ajena al préstamo hipotecario".[8]

Inconforme con lo resuelto, la apelante presentó una *Moción de Reconsideración*,[9] la cual fue declarada No Ha Lugar.[10] Aún inconforme, en esta misma fecha, la Asociación presentó ante este tribunal revisor el recurso de apelación de epígrafe que nos ocupa. Oportunamente, el

---

[6] *Id.*, págs. 5-6.
[7] *Id.*, pág. 15.
[8] *Id.*, pág. 16.
[9] SUMAC, Entrada 64 en CG2024CV02038.
[10] SUMAC, Entrada 71 en CG2024CV02038.

apelado presentó su escrito de oposición el cual perfeccionó el recurso. En vista de lo anterior, nos encontramos en posición de resolver.

**II**

**A**

En nuestro ordenamiento jurídico, la sentencia sumaria se rige por la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V. R. 36. La sentencia sumaria es aquel mecanismo que "posibilita una disposición ágil de casos sin la celebración de un juicio, siempre que no presenten controversias genuinas de hechos materiales". *Birriel Colón v. Econo y Otros*, 213 DPR 80, 90 (2023). Conforme la letra de la Regla 36. 1 de Procedimiento Civil, 32 LPRA Ap. V R. 36.1, para poder adjudicar en sus méritos una moción de sentencia sumaria a favor del reclamante, lo que se requiere es que se presente "una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente", ya sea sobre la totalidad de la reclamación o parte de esta. En este sentido, un hecho material "es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable". *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 110 (2015). Por ello, "[l]a controversia debe ser de una calidad suficiente como para que sea necesario que un juez la dirima a través de un juicio plenario". *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010).

En armonía con lo anterior, la sentencia sumaria solo debe dictarse en casos claros. Si no existe certeza sobre todos los hechos materiales en la controversia, no procede que se dicte sentencia sumaria. Sin embargo, se ha establecido que la sentencia sumaria, "[p]rocede, aunque se hayan alegado hechos que aparenten estar en controversia, pero cuando el promovente logre demostrar preponderantemente, y mediante dicha prueba documental, que en el fondo no existe controversia sobre los hechos medulares". *Jusino et als. v. Walgreens*, 155 DPR 560, 577 (2001). Ante esta situación, la parte promovida debe "defenderse de la misma

forma, es decir, apoyándose a su vez de documentos u otra evidencia admisible". *Id.*

Asimismo, la Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3, establece unos requisitos de forma a ser cumplidos por la parte promovente y la parte promovida. Sobre los requisitos a cumplir por la parte promovente, la Regla 36.3 en su inciso (a) de Procedimiento Civil, *supra,* establece lo siguiente:

(1) una exposición breve de las alegaciones de las partes;

(2) los asuntos litigiosos o en controversia;

(3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria;

(4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;

(5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable,

(6) el remedio que debe ser concedido.

Si el promovente incumple con los requisitos de forma, "el tribunal no estará obligado a considerar su pedido". *Meléndez González v. M. Cuebas*, *supra*, pág. 111. Del mismo modo, si el promovido es quien incumple dichos requisitos "el tribunal puede dictar Sentencia Sumaria a favor de la parte promovente, si procede en derecho". *Id.*

En fin, toda vez que la sentencia sumaria es un remedio de carácter discrecional, "[e]l sabio discernimiento es el principio rector para su uso porque, mal utilizada, puede prestarse para despojar a un litigante de 'su día en corte', principio elemental del debido proceso de ley". *Mgmt. Adm. Servs. Corp. v. E.L.A.,* 152 DPR 599, 611 (2000). Siendo esto así, solo procede que se dicte la sentencia sumaria "cuando surge de manera clara que, ante los hechos materiales no controvertidos, el promovido no puede prevalecer ante el Derecho aplicable y el Tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia".

*Meléndez González v. M. Cuebas*, *supra*, págs. 109-110, que cita a: *Const. José Carro v. Mun. Dorado*, 186 DPR 113 (2012).

Según se ha reiterado jurisprudencialmente, este tribunal revisor se encuentra en la misma posición que el foro de primera instancia al determinar si procede o no una sentencia sumaria. Sin embargo, al revisar la determinación del tribunal primario, estamos limitados de dos maneras: (1) considerar solamente los documentos que se presentaron ante el foro de primera instancia; y (2) determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y (3) comprobar si el derecho se aplicó de forma correcta. Esto es, estamos impedidos de adjudicar los hechos materiales esenciales en disputa. *Birriel Colón v. Econo y Otros*, *supra*, pág. 91; *Vera v. Dr. Bravo*, 161 DPR 308, 334-335 (2004). El deber de adjudicar hechos materiales y esenciales es una tarea que le compete al Tribunal de Primera Instancia y no al foro intermedio.

A esos efectos, el Tribunal Supremo de Puerto Rico estableció el estándar específico que debemos utilizar como tribunal revisor al momento de evaluar determinaciones del foro primario en las que se conceden o deniegan mociones de sentencia sumaria. En lo pertinente, dispuso que "[l]a revisión del Tribunal de Apelaciones es una *de novo* y debe examinar el expediente de la manera más favorable a favor de la parte que se opuso a la *Moción de Sentencia Sumaria* en el foro primario, llevando a cabo todas las inferencias permisibles a su favor". *Meléndez González v. M. Cuebas*, *supra*, pág. 118. Además, reiteró que por estar en la misma posición que el foro primario, revisaremos que la moción de sentencia sumaria y su oposición, cumplan con los requisitos de forma recopilados en la Regla 36 de Procedimiento Civil. *Id*. Por lo cual, luego que culminemos nuestra revisión del expediente, de encontrar que en realidad existen hechos materiales y esenciales en controversia, debemos tener en cuenta el cumplimiento de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V R. 36.4, y exponer concretamente cuáles hechos materiales están controvertidos y cuáles están incontrovertidos. Por el contrario, de resultar

que los hechos materiales y esenciales realmente están incontrovertidos, entonces nos corresponde revisar de *novo* si el foro impugnado aplicó correctamente el derecho a los hechos incontrovertidos. *Id.*, pág. 119.

**B**

La Ley Núm. 129 de 16 de agosto de 2020, *Ley de Condominios de Puerto Rico*, 31 LPRA sec. 1921 *et seq.* (Ley de Condominios), prima el ordenamiento jurídico sobre la gobernanza de los inmuebles sujetos al régimen de propiedad horizontal. A este estatuto, le siguen la escritura matriz y el reglamento del condominio de que se trate. *Con Tit. Centro Int'l Torre II v. PRCI*, 210 DPR 403, 413-414 (2022). La primacía del estatuto implica que cualquier cláusula o regla claramente contraria a sus disposiciones sería nula. *Id.*, pág. 414; *Brown III v. J.D. Cond. Playa Grande*, 154 DPR 225, 238-239 (2001). Del mismo modo, nuestro Tribunal Supremo ha resuelto que las disposiciones del estatuto especial son de carácter mandatorio y no supletorio. *Con Tit. Centro Int'l Torre II v. PRCI*, *supra*; *Condominio First Federal Savings v. LSREF2 Island Holdings*, 202 DPR 934, 940 (2019). Dicha Ley define en su Artículo 3 las figuras del adquirente voluntario e involuntario de la siguiente manera:

> b) Adquiriente Involuntario – El acreedor hipotecario que, para proteger su acreencia, adquiera una propiedad como parte de un proceso de ejecución de hipoteca, licitando o sin licitar, o de dación en pago, total o parcial.
>
> c) Adquiriente Voluntario – Persona que, luego de ejercer su criterio en el curso usual de los negocios, deliberadamente adquiere el bien inmueble porque le resulta un buen negocio. Se entiende que incluye a un comprador convencional, un donatario, un heredero, un legatario, un permutante o un licitador que se lleva la buena pro en la subasta. 31 LPRA sec. 1921b.

Adicionalmente, nuestro Más Alto Foro tuvo la oportunidad de aclarar la figura del adquirente involuntario y subrayar lo que distingue a este sujeto de un adquirente voluntario en *Condominio First Federal v. LSREF2*, *supra*. En dicho caso, el Tribunal Supremo de Puerto Rico tenía ante sí una controversia que giraba en torno a determinar si una compañía que se dedicaba a la compra de créditos hipotecarios podía considerarse como un adquirente involuntario. La decisión del Tribunal Supremo fue

responder en la negativa. Al respecto, señaló que un adquirente *involuntario* posee los siguientes elementos: (1) es un acreedor hipotecario; **(2) la razón o el interés fundamental no es convertirse en dueño del inmueble, sino proteger su acreencia constituida —usualmente— antes de que empiece a acumularse la deuda de las cuotas por mantenimiento;** (3) para él, la "deuda no es elemento u objeto de contratación[,] y [4] su acreencia no debe sufrir disminución porque el deudor incumpla otra obligación ajena y extraña a la suya. (Énfasis nuestro.) *Condominio First Federal v. LSREF2*, *supra*, págs. 944-945. Discute además que, **es de suma importancia el interés con el que se adquiere el bien,** por lo que establece los siguiente:

> **El adquirente *involuntario* es *originalmente un acreedor* cuyo *interés fundamental* no es hacerse dueño del apartamiento sino *proteger su acreencia* constituida usualmente antes de que empiece a acumularse la deuda por gastos comunes del condominio.** [...] Para el adquirente involuntario, acreedor en uno de los tres casos del Art. 40, dicha deuda no es elemento u objeto de contratación y su acreencia no debe sufrir disminución porque el deudor incumpla otra obligación ajena y extraña a la suya. Bajo ninguna circunstancia sería equitativo exigir esa deuda [...] al acreedor hipotecario que ejecuta para recobrar el principal y los intereses pactados. (Escolio omitido). *Condominio First Federal v. LSREF2*, *supra*, pág. 944, que cita a *Asoc. de Condómines v. Naveira*, 106 DPR 88, 97 (1977). (Énfasis nuestro.)

En contraste, el Honorable Tribunal identifica también al adquirente *voluntario* es un comprador, un donatario, un permutante o un licitador que se lleva la buena pro en una subasta. *Condominio First Federal v. LSREF2*, *supra*, pág. 943, que cita a *Asoc. de Condómines v. Naveira*, *supra*, pág. 96. Añade que el adquirente voluntario "es un comprador que bien informado de los gravámenes y cargas del apartamiento lo adquiere porque es un buen negocio. […] El adquirente voluntario tiene oportunidad y medios de enterarse de la deuda por gastos comunes del condominio y poder de decisión para asumirlos como gravamen del inmueble que adquiere". *Condominio First Federal v. LSREF2, supra*, págs. 943-944, que cita a *Asoc. de Condómines v. Naveira*, *supra*, pág. 97 (1977).

A pesar de que dicho caso interpreta una Ley de Condominios derogada, este explica acerca del antiguo Artículo 40 que:

Se deduce de ello la razón del legislador al no postergar la hipoteca a la responsabilidad por cuotas de mantenimiento devengadas con posterioridad al gravamen real preferente y cuyo importe es impredecible en el momento de constitución del crédito hipotecario. El comprador convencional pacta y acuerda el precio conociendo el total exacto de las cuotas adeudadas, por las que habrá de asumir responsabilidad. Para el acreedor hipotecario esa deuda no es elemento contractual simplemente porque no existe al tiempo de constituirse la hipoteca que garantiza el precio de compra. *Condominio First Federal v. LSREF2*, *supra*, pág. 946, que cita a *Asoc. de Condómines v. Naveira*, supra, pág. 93, n. 2.

Por su parte, la Ley de Condominios, *supra*, establece en su Artículo 60 lo siguiente acerca de la responsabilidad de cada figura:

**Artículo 60. — Obligación del Titular por Gastos Comunes, Gravamen**

La obligación del titular de un apartamento por su parte proporcional de los gastos comunes constituirá un gravamen sobre dicho apartamento. Por lo tanto, luego de la primera venta, el adquirente voluntario de un apartamento será solidariamente responsable con el transmitente del pago de las sumas que éste adeude, a tenor con el Artículo 59, hasta el momento de la transmisión, sin perjuicio del derecho del adquirente a repetir contra el otro otorgante, por las cantidades que hubiese pagado como deudor solidario. **Un adquirente involuntario será responsable solamente de las deudas por gastos comunes surgidas y no satisfechas durante los seis (6) meses anteriores al momento de adquirir la propiedad excepto las partidas correspondientes a penalidades por atrasos o mora, derramas, intereses y sanciones atribuibles al titular, incluirá el balance corriente que se acumule desde la adquisición de dicho inmueble por parte del adquiriente involuntario.**
La referida obligación será exigible a quien quiera que sea titular de la propiedad que comprende el apartamento, aun cuando el mismo no haya sido segregado e inscrito como finca filial en el Registro de la Propiedad, o enajenado a favor de persona alguna.
Cualquier institución financiera que provea un financiamiento interino a una persona para la construcción de apartamentos y elementos comunes a ser sometidos o sometido al Régimen de Propiedad Horizontal y se convierta en dueño del inmueble en un procedimiento de ejecución o dación en pago, no será considerada como Desarrollador, Administrador Interino o constituyente del régimen conforme dispone esta Ley, siempre y cuando la institución financiera no rebase sus funciones usuales de un acreedor en la protección de su garantía de conformidad con las prácticas comerciales seguidas por instituciones financieras que proveen financiamiento interino de construcción de entidad financiera. (Énfasis nuestro.) 31 LPRA sec. 1923e.

**III**

En su escrito de apelación, la Asociación plantea que Oriental Bank es un adquirente voluntario puesto que este conocía de la deuda por cuotas de mantenimiento en el proceso de quiebras instado por el anterior titular de la propiedad y deudor del préstamo hipotecario, el señor Samuel Ortiz Espinosa. Dicho planteamiento se recoge en el citado señalamiento de error que expone en su recurso. Su argumento para sustentar el referido señalamiento de error se resume en que, al amparo de lo establecido por el Tribunal Supremo en *Condominio First Federal v. LSREF2*, *supra*, quien adquiere un crédito hipotecario con conocimiento de deuda existente es un adquirente voluntario sujeto a responsabilidad. Añade la Asociación que, al Oriental haber comparecido ante el tribunal donde se ventilaba la quiebra del Sr. Ortiz Espinosa, este claramente conocía la deuda pendiente por cuotas de mantenimiento, por lo que lo hacía un adquirente voluntario, y, por tal motivo, el TPI erró en su análisis. No obstante, lo anterior, colegimos que a la apelante no le asiste la razón. Veamos.

Luego de escudriñados *de novo* los escritos presentados por las partes, procedemos a determinar si las partes cumplieron con los requisitos de forma exigidos por las Reglas de Procedimiento Civil, *supra*, para una moción de sentencia sumaria, así como la contestación de esta. Al analizar los respectivos escritos, concluimos que tanto el apelante como la parte apelada cumplen con los requisitos de forma exigidos para que sea atendida la aludida moción. Por consiguiente, nos queda determinar si existe una controversia real sobre hechos materiales y esenciales, y si el TPI aplicó correctamente el derecho. Colegimos que no existe controversia real sobre los hechos materiales del caso y resolvemos en la afirmativa en cuanto a si el foro primario aplicó correctamente el derecho.

De entrada, subrayamos el hecho de que Scotiabank obtuvo el préstamo hipotecario otorgado por HR Mortgage Corp. mediante una cesión y como resultado del mercado secundario. Al esto haber ocurrido dos días luego de aprobado el préstamo hipotecario, Scotiabank pasó a ser

acreedor cuando este no había incurrido deuda alguna, tal y como detalla las determinaciones de hechos incontrovertidos realizadas por el TPI. Posterior a ello, en el año 2019, Oriental Bank formó parte del panorama por la fusión que se realizó entre Scotiabank y Oriental, siendo Oriental la entidad que sobrevivió la unión. Por tanto, aclaramos que Oriental Bank no compró un crédito hipotecario, sino que se convirtió en acreedor hipotecario por haber fusionado con Scotiabank. Ello implica que Oriental vino a tomar el lugar de Scotiabank, es decir, reemplazarlo en sus gestiones. Al respecto, nos indica el profesor Carlos Díaz Olivo lo siguiente:

> Al efectuarse una fusión o consolidación, **las corporaciones que desaparecen como parte de la transacción pierden su personalidad jurídica independiente, pero la entidad resultante se convierte automáticamente en titular de todas las propiedades, los derechos y las obligaciones de las corporaciones que desaparecieron.** […] La transferencia de las propiedades, los derechos y las obligaciones opera por disposición de ley. Por consiguiente, no es necesario formalizar nuevos contratos, efectuar cambios de títulos de propiedad u otros arreglos que se utilizan de ordinario para formalizar transferencia de activos u obligaciones, conforme a nuestro ordenamiento jurídico. Tampoco se afectarán por una fusión o consolidación los derechos y gravámenes que tuvieran los acreedores de las corporaciones que desaparecen, pues estos subsistirán y podrán exigirse, en idénticas condiciones, contra la entidad que prevalezca finalmente en la transacción. C. Díaz Olivo, *Corporaciones: Tratado sobre Derecho Corporativo*, Editorial Alma Forte, 2da Ed. 2022, págs. 409-410.

Es también importante destacar que el caso en el cual se apoya la apelante, *Condominio First Federal v. LSREF2*, *supra,* fue resuelto en un contexto donde la entidad que es establecida como adquirente voluntaria compró el crédito hipotecario con la intención de lucrarse y aprovecharse del mercado. No obstante, en el caso que nos ocupa, Oriental Bank adquirió el préstamo hipotecario como resultado la fusión mencionada, por lo que también adquirió las obligaciones de Scotiabank. Por tal motivo, Oriental no compró un crédito hipotecario a precio irrisorio con la intención de aprovecharse de ello, tampoco lo hizo así Scotiabank. Además, el mero conocimiento de una deuda no implica que quien adquiere se convierte automáticamente en voluntario. Pues de la misma jurisprudencia citada se desprende que "el adquirente *involuntario* es *originalmente un acreedor*

cuyo *interés fundamental* no es hacerse dueño del apartamiento sino *proteger su acreencia* constituida usualmente antes de que empiece a acumularse la deuda por gastos comunes del condominio". Ello implica que un factor determinante es la intención con la que se obtuvo el crédito hipotecario, tal y como resolvió el TPI en su *Sentencia*.

Por otro lado, como esbozamos en el derecho aplicable, el aludido caso nos provee con las características para identificar a un adquirente involuntario. Estas son: (1) es un acreedor hipotecario; (2) la razón o el interés fundamental no es convertirse en dueño del inmueble, sino proteger su acreencia constituida —usualmente— antes de que empiece a acumularse la deuda de las cuotas por mantenimiento; (3) para él, la deuda no es elemento u objeto de contratación[,] y (4) su acreencia no debe sufrir disminución porque el deudor incumpla otra obligación ajena y extraña a la suya. Luego de evaluar la totalidad del expediente, disponemos que, a la luz de lo expuesto, Oriental Bank es un adquirente involuntario por ser haber advenido acreedor hipotecario mediante fusión y sin la intención de convertirse en dueño de la propiedad, sino que sus acciones fueron llevadas a cabo con el propósito de proteger su acreencia en sustitución de Scotiabank.

**IV**

Por los fundamentos anteriormente expuestos, confirmamos la *Sentencia* apelada.

**Notifíquese.**

Lo acuerda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones